UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------X
ST. PAUL FIRE & MARINE            :
INSURANCE COMPANY,                :   Civil Action No.:
                                  :
    Plaintiff,                    :
                                  :
    v.                            :   **COMPLAINT FOR**
                                  :   **<u>DECLARATORY JUDGMENT</u>**
TANNERS AVENUE CORP.,             :
                                  :
    Defendant.                    :
-------------------------------------------------------------X

    Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY (hereinafter "Plaintiff" or "St. Paul"), by and through its attorneys, Finazzo Cossolini O'Leary Meola & Hager, LLC, as and for its Complaint against the Defendant, TANNERS AVENUE CORP., (hereinafter "Defendant" or "Tanners"), alleges, upon information and belief, as follows:

    1.    This action is brought pursuant to 28 U.S.C. § 2201 and seeks a declaration of the rights, duties and obligations of the parties with respect to a certain policy of marine insurance underwritten by St. Paul, namely, Cargo Elite Policy number OC02900399/ ZOC-10T70836 (hereinafter "the Cargo Policy") issued to Tanners as the named insured.

    2.    The subject matter of the Cargo Policy issued by St. Paul to Tanners concerns certain of Tanners' merchandise, consisting principally of leather jackets and leather accessories (hereinafter "the Leather Goods"), which sustained heavy mold damage during long-term storage in Tanners' warehouse, and this declaratory judgment action concerns whether Tanners acted reasonably, *i.e.*, as would a reasonably prudent uninsured, to mitigate against mold damage, as it was required to do, between 2017 and 2019.

3. St. Paul seeks a judgment declaring that it is not required to provide insurance coverage to Tanners with respect to mold damage to the Leather Goods that resulted from general dampness and/or other exposure to moisture between 2017 and 2019.

4. This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure because this action involves a dispute over a maritime contract, *i.e.*, a marine insurance policy, and involves damage to cargo covered by an ocean marine cargo policy.

5. St. Paul is an insurance company and a citizen of the State of Connecticut with its principal place of business in Hartford, Connecticut.

6. Tanners is an owner and/or seller of leather merchandise and a citizen of the State of New Jersey with its principal place of business in Hackensack, New Jersey.

7. In addition to admiralty jurisdiction, subject matter jurisdiction exists on the alternative basis of diversity of citizenship under 28 U.S.C. § 1332 because St. Paul and Tanners are citizens of different States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Tanners resides within this District, the Policy was delivered to Tanners within this District, and the events giving rise to the claim occurred within this district. As such, the District of New Jersey is the proper and most convenient venue.

9. At all times relevant hereto, St. Paul duly issued the Cargo Policy to Tanners, and that Cargo Policy was in force from July 23, 2016 through July 23, 2017.

10. On or about May 8, 2017, Tanners notified St. Paul that its warehouse, which contained the Leather Goods, was affected by flooding on that day, and that some of the Leather

Goods, not all, sustained wetting damage as a result. After performing its claim investigation, St. Paul settled Tanners' 2017 claim and issued payment to Tanners.

11. More than sixteen months later, on or about September 12, 2018, Tanners reported a supplemental claim to St. Paul involving previously undamaged portions of the Leather Goods, additional damage that Tanners attributed to flooding in May 2017. After performing its claim investigation, St. Paul settled Tanners' 2018 supplemental claim and issued payment to Tanners.

12. St. Paul paid Tanners a total of $532,381.88 in relation to the 2017 claim and the 2018 supplemental claim for the portion of the Leather Goods that had been damaged.

13. During a September 2018 inspection at Tanners' warehouse, St. Paul's expert concluded that significant portions of Tanners' warehouse were "severely mold contaminated" due to general dampness in that building.

14. During that inspection, St. Paul's expert advised Ms. Sandy Han, who is Tanners' principal and who runs Tanners' business operations, among other things, that Tanners needed to take several immediate steps to remediate the mold contamination in the warehouse, including bringing in a mold remediation company, and that all undamaged merchandise in sealed cartons, *i.e.* the undamaged portion of the Leather Goods, needed to be wiped down with an ammonia solution and moved to the second floor (which had not yet been overrun by mold contamination).

15. Subsequently, in August 2019, Tanners reported a second supplemental claim to St. Paul involving portions of the Leather Goods that had been determined to be sound and/or otherwise undamaged in 2018. In 2019, Tanners confirmed that all inventory that remained inside the warehouse consisted of what was left from the Leather Goods that St. Paul first inspected in 2017, *i.e.,* no new inventory was received since 2017.

16. In September 2019, St. Paul's expert again attended the Tanners warehouse, and this time upon entering the building he was assaulted with the overwhelming odor of mold/mildew, which was far stronger than during his 2018 inspection. He also observed widespread mold contamination throughout the building, including growing up the walls and growing upon the office furniture. He reported that he had only once before observed a building structure so badly contaminated with mold, and that was in the context of abandoned buildings that he had inspected post-Superstorm Sandy after 2012. In his view, by 2019 the Tanners' warehouse was contaminated so badly that it needed to be either gutted or razed.

17. During the 2019 inspection, Tanners' representative, Ms. Han, admitted to St. Paul's expert that, following the 2018 inspection, Tanners had *not* called a mold remediation company nor had Tanners wiped down any merchandise in cartons nor were any of the cartons of merchandise on the first floor moved to the second floor, as the expert had recommended. Merchandise on the first floor was examined and found to be severely affected by mold growth and contamination. St. Paul's expert concluded that the severe mold condition that then existed in the warehouse was of such strong growth and odor that it was likely not safe to enter the building.

18. During the 2019 inspection, St. Paul's representative found that mold had also migrated from the first to the second floor, the odor on the second floor was just as bad as that on the first floor, and mold was observed growing on the walls and on the underside of the roof. Put simply, the mold contamination in the warehouse was out-of-control and had gone totally unchecked since the inspection in September 2018.

19. St. Paul's expert concluded that the condition of the warehouse building had been deteriorating for years, due to ingress of water, lack of maintenance and lack of preventative

measures, resulting in consistently high humidity and wet conditions within the building, which resulted in the heavy mold formation, and which was the cause of damage to the Leather Goods.

20. The 2019 inspection did not reveal evidence of a fortuity nor was St. Paul presented with any evidence of an external cause resulting in the damages Tanners claimed.

21. St. Paul has issued Tanners a reservation of rights letter. Under the circumstances described above, St. Paul seeks a declaration that Tanners' insurance claim is not covered.

22. The Cargo Policy is limited in scope and does not cover loss, misfortune or damage to cargo arising as a result of the insured's failure to safeguard its cargo. Specifically, as stated in the Cargo Policy:

> **33. SUE AND LABOR CLAUSE:**
>
> In the case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the said goods and/or merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the goods and/or merchandise insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; to the charges whereof, the said Insurance Company will contribute in accordance with the Assured's interest.

This provision in the Cargo Policy provides that it is lawful and necessary for Tanners to safeguard its cargo without prejudice to the insurance provided by St. Paul.

23. A Sue and Labor clause in a marine cargo policy obligates the insured to take steps to protect damaged property from further loss once a loss has occurred. In this case, Tanners failed to take such steps to mitigate loss to the Leather Goods, breaching its obligations under the Cargo Policy.

5

24. An actual and justiciable controversy exists between St. Paul and Tanners because the coverage provided by the Cargo Policy does not extend to or embrace the latest supplemental claim Tanners asserted in August 2019.

25. By reason of the foregoing, St. Paul is entitled to a declaratory judgment providing that it has no further obligation to provide insurance coverage to Tanners under the Cargo Policy in relation to the damaged Leather Goods.

**WHEREFORE,** Plaintiff, ST. PAUL FIRE & MARINE INSURANCE COMPANY seeks a judgment declaring that pursuant to the terms of the Cargo Policy, it has no further obligation to provide insurance coverage to Tanners Avenue Corp. in connection with the Leather Goods that are the subject matter of the Cargo Policy due to Tanners' failure to mitigate against further damage and/or otherwise fail to act as would a reasonably prudent uninsured.

St. Paul further prays that the judgment grant it the costs and expenses of this action and such other relief as this Court may deem just and proper.

Dated: February 14, 2020

**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By: _/s/ Rachel R. Hager_____
RACHEL R. HAGER, ESQ.
1776 On the Green
67 East Park Place, Suite 901
Morristown, New Jersey 07960
Tel: (973) 343-4960
Fax: (973) 343-4970
Rachel.Hager@finazzolaw.com
*Attorneys for Plaintiff*
*St. Paul Fire & Marine Insurance Company*