<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>     *Plaintiff*,<br><br>   v.<br><br>TANNERS AVENUE CORP.,<br><br>     *Defendant*. | Civil No.: 20-cv-1605 (KSH) (CLW)<br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

This insurance coverage dispute concerns whether plaintiff St. Paul Fire & Marine Insurance Company is obligated to pay for losses defendant Tanners Avenue Corporation, a leather goods wholesaler, incurred for mold-damaged merchandise. St. Paul has sought declaratory judgment that Tanners is not entitled to any further coverage under the relevant marine cargo insurance policy, while Tanners, via counterclaim, has sought declaratory judgment that coverage is required and asserts that St. Paul acted in bad faith in denying the claim. Both sides have cross-moved for summary judgment. (D.E. 52, 53.) For the reasons set forth below, summary judgment is not appropriate and both motions will be denied.

**II. Background**

Tanners was a wholesaler that sold leather goods, including jackets, coats, gloves, and accessories operating from a warehouse in Hackensack. (D.E. 53-2, Tanners R. 56.1 Stmt., ¶¶ 3-4; D.E. 55-1, St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 3-4.) St. Paul issued Tanners a marine cargo insurance policy for the leather goods; at all times relevant, that policy was in place and it had a policy limit of $1,000,000. (Tanners R. 56.1 Stmt., ¶¶ 5-6; St. Paul Resp. to Tanners R.

1

56.1 Stmt., ¶¶ 5-6; D.E. 52-1, St. Paul R. 56.1 Stmt., ¶ 50.)[1]  In June 2017 and September 2018, Tanners made claims to St. Paul seeking coverage for mold-damaged leather goods based on a May 2017 flood in the warehouse's sunken loading dock and a related sump pump failure. (Tanners R. 56.1 Stmt., ¶¶ 24, 75, 77, 89-90; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 24, 75, 77, 89-90; D.E. 56, Tanners Resp. to St. Paul R. 56.1 Stmt., ¶ 6.)  St. Paul paid out a total of $532,381.88 on those claims.  (Tanners Resp. to St. Paul R. 56.1 Stmt., ¶ 9.)[2]

In August 2019, Tanners opened cartons of merchandise that had not been claimed as part of the earlier losses and discovered that the leather goods inside were mold-damaged, prompting it once again to seek coverage from St. Paul.  (Tanners R. 56.1 Stmt., ¶ 110; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶ 110.)  Tanners' claim was $791,037.38 for this merchandise, and St. Paul acknowledged receipt of the claim on September 11, 2019.  (Tanners R. 56.1 Stmt., ¶ 115; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶ 115.)  Just under two weeks later, on September 23, 2019, Tanners' owner and manager, Sandy Han, discovered that a portion of the warehouse had been flooded by what was later determined to be a burst pipe in a wall.  (Tanners R. 56.1 Stmt., ¶¶ 10, 117; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 10, 117.)  Repair and remediation efforts were undertaken with respect to the pipe and related damage.  (Tanners R. 56.1 Stmt., ¶¶

---

[1] The company of issuance was later amended to Travelers Property Casualty Company of America.  (Tanners R. 56.1 Stmt., ¶ 5; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶ 5; D.E. 56, Tanners Resp. to St. Paul R. 56.1 Stmt., ¶ 1.)  Although the parties' motion papers refer to plaintiff as "Travelers" throughout, no request was made to add Travelers as a party to this action or to substitute it as plaintiff.  As such, the Court refers to the plaintiff as St. Paul.

[2] The record contains slight discrepancies as to this figure.  Although the parties agreed that this was the amount paid out (Tanners Resp. to St. Paul R. 56.1 Stmt., ¶ 9), they also agreed that the claims were paid in the amounts of $85,410 and $446,871.61, respectively, which adds up to $532,281.61.  (Tanners R. 56.1 Stmt., ¶¶ 86, 107; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 86, 107.) The difference is not material to the resolution of the cross-motions for summary judgment, nor is the dispute over whether the claims subsequent to the 2017 claim (*i.e.*, in 2018 and 2019) are properly characterized as "supplemental" to it or are separate claims.

118, 120; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 118, 120.)  Mold testing was later carried out, with mixed results and the import of which the parties dispute.  (*E.g.*, Tanners R. 56.1 Stmt., ¶¶ 121-22; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 121-22.)  Ultimately, Tanners asserts that it ceased operating around September 2019 and blames St. Paul for its demise; St. Paul disputes its role in Tanners' closure.  (Tanners R. 56.1 Stmt., ¶¶ 116, 124, 127; St. Paul Resp. to Tanners R. 56.1 Stmt., ¶¶ 116, 124, 127.)

It is undisputed that St. Paul did not pay out on Tanners' 2019 claim.  Instead, on February 14, 2020, St. Paul filed the present action seeking a declaration as to its and Tanners' rights, duties, and obligations under the policy; specifically, it has sought a declaratory judgment that it has no further obligation to provide coverage to Tanners under the policy in relation to the damaged goods.  (D.E. 1.)  Tanners has counterclaimed for declaratory judgment that St. Paul is required to provide coverage for the loss reflected in the 2019 insurance claim and seeks damages for St. Paul's alleged bad faith adjustment of the claim.  (D.E. 8.)  The parties' cross-motions seeking summary judgment are fully briefed.  (D.E. 52, 53, 55-62, 65, 66.)[3]

### III. Standard of Review

Summary judgment is only appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute qualifies as "genuine" where the evidence would allow a reasonable factfinder to return a verdict for the nonmovant.  *Jutrowski v. Twp. of*

---

[3] The Court declines St. Paul's invitation (D.E. 64) to reject the motion papers filed by Tanners or to deem St. Paul's factual assertions undisputed because Tanners filed them late (the first by appropriately 4 hours, the second by approximately a half hour).  The delay did not prejudice either St. Paul's ability to respond nor the Court's ability to timely decide the motions, and the Court assumes good faith in counsel's assurance (D.E. 67) that all filings going forward will be made in a timely fashion.

*Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018).  Facts are "material" where they "might affect the outcome of the suit under the governing law." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up).  The Court is not permitted to resolve credibility disputes or weigh the evidence at the summary judgment stage.  *Burton v. Teleflex Inc.*, 707 F.3d 417, 428-29 (3d Cir. 2013).  The standard remains the same when the parties have cross-moved for summary judgment.  *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

**IV.    Discussion**

Central to the parties' arguments in support of and in opposition to summary judgment is the condition of the Tanners warehouse when the company made its insurance claims to St. Paul.  It is St. Paul's position that the warehouse had a moisture and humidity problem that caused the goods that were the subject of the 2019 claim to become mold-damaged and that Sandy Han, Tanners' owner and manager, was made aware of the issue during the adjustment of the 2018 claim and failed to rectify it.  Invoking a "sue and labor" clause in the insurance policy,[4] St. Paul asserts that Tanners failed to act reasonably to mitigate and protect against further damage to the

---

[4] This clause provides as follows:

> In the case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, their factors, servants and assigns, to sue, labor, and travel for, in and about the defense, safeguard and recovery of the said goods and/or merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the goods and/or merchandise insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; to the charges whereof, the said Insurance Company will contribute in accordance with the Assured's interest.

(D.E. 52-3, Murphy Cert., Ex. 3, Ins. Policy § 33; *see also* Tanners Resp. to St. Paul R. 56.1 Stmt., ¶ 50.)

4

leather goods once it was on notice of the allegedly problematic warehouse conditions.  (*See, e.g.*, D.E. 52-2, St. Paul Moving Br. 5.)

Tanners disputes that the sue and labor clause applies.  Even if the clause applies, or, alternatively, to the extent St. Paul asserts that Tanners breached a duty implied in law to prevent damage to insured property (in other words, that Tanners acted negligently), Tanners argues that St. Paul has failed to show that Tanners acted unreasonably in safeguarding the goods or maintaining the warehouse.  (D.E. 53-1, Tanner Moving Br. 8-12.)  In pursuing its bad faith claim against St. Paul, Tanners argues that St. Paul chose to rely on unreliable information about the warehouse's condition that is "contrary to the weight of the evidence"; in other words, Tanners is saying St. Paul "chose to rely on a sham description of the warehouse in order to wrongfully deny Tanners' claim."  (*Id.* at 13, 15.)

Choosing between the competing versions offered by each side would require the Court to assess the credibility of evidence that includes testimony, documents, declarations, and reports from cargo surveyors and an investigator engaged by St. Paul, Tanners employees, the owner/manager of Tanners, and contractors and others involved in repairing the warehouse, an exercise that is inappropriate at the summary judgment stage.  *Burton*, 707 F.3d at 428-29.  The parties also rely on experts that offer conflicting opinions about the condition of the warehouse.  *Smith v. State Farm Fire & Cas. Co.*, 2023 WL 3561406, at *6 (D.N.J. May 19, 2023) (Williams, J.) ("classic battle of the experts over disputed facts" had to be settled by trier of fact, requiring denial of summary judgment motion (cleaned up)); *see also Ho v. Goldman Sachs & Co. Grp. Long Term Disability Plan*, 2016 WL 8673067, at *14 (D.N.J. Oct. 28, 2016) (McNulty, J.) ("It is not this Court's role, on summary judgment, to declare a victor in the battle of the experts.")

5

The existence of genuine factual disputes precludes summary judgment for either side, and neither has shown that judgment as a matter of law is appropriately entered in its favor. *Auto-Owners*, 835 F.3d at 402 ("When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)). Accordingly, the motions will be denied, and the matter will proceed to a non-jury trial before the undersigned, with the preparation and filing of a final pretrial order to be supervised by Magistrate Judge Cathy L. Waldor.

**V.     Conclusion**

The cross-motions for summary judgment are denied.  An appropriate order will enter.


Dated: August 30, 2023                                        /s/ Katharine S. Hayden
                                                              Katharine S. Hayden, U.S.D.J.